**BOARD OF EDUCATION OF HOPKINS COUNTY, Kentucky, Appellant,**

**and**

**Attorney General Chris Gorman, Intervening Appellant,**

v.

**William T. BROOKS, Hopkins County Court Clerk; Loretta A. Siria; and Dwight Mason, Appellees.**

No. 91–CA–000363–MR.

Court of Appeals of Kentucky.

Feb. 14, 1992.

**432**

J. Keith Cartwright, Frymire, Evans, Peyton, Teague & Cartwright, Madisonville, John C. Fogle, William H. Fogle, Bryan, Fogle & Chenoweth, Mt. Sterling, for appellant.

Chris Gorman, Atty. Gen., Thomas J. Hellmann, Asst. Atty. Gen., Frankfort, for intervening appellant.

W. Logan Calvert, Madisonville, for William T. Brooks, Hopkins County Court Clerk.

Thomas J. Luber, Frank F. Chuppe, Holliday Hopkins Thacker, Wyatt, Tarrant & Combs, Louisville, for Siria and Mason.

Before HOWERTON, HUDDLESTON and McDONALD, JJ.

HUDDLESTON, Judge.

The Board of Education of Hopkins County, Kentucky, appeals from an order declaring that special taxes levied by a school board as authorized by KRS 160.593 *et seq.* are subject to levy recall. Because we are satisfied that the trial court correctly interpreted the present school funding statutes, we affirm its decision to permit a recall election to be held.

In 1990, the Kentucky General Assembly, in response to the Supreme Court's directive in *Rose v. Council for Better Education, Inc.,* Ky., 790 S.W.2d 186 (1989), enacted an Education Reform Act which revised both state and local school taxing structures. KRS 160.470, which is among the statutes the Act amended, establishes a minimum base funding level, a portion of which is to be raised by local school districts with the levy of a minimum equivalent tax of thirty cents per $100.00 of assessed valuation. KRS 160.470(12)(a). The local effort may be composed of an *ad valorem* property tax, or the special taxes—occupational license tax, utility gross receipts license tax or excise tax—authorized by KRS 160.593 *et seq.,* or a combination of these taxes.

In addition, local school districts may secure so-called "Tier One funding"[1] by levying an equivalent tax rate which will produce additional revenue up to fifteen percent of the base funding level. KRS 157.440. This revenue is equalized by the state at one hundred fifty percent of the statewide average per pupil assessment. *Id.*

At its August, 1990, meeting the Hopkins County Board of Education resolved to levy taxes sufficient to obtain full Tier One funding. To achieve its funding goals, the Board decided to employ both property and utility gross receipts license taxes. Following a public hearing on September 24, 1990, the Board formally levied a utility gross receipts license tax.

After the tax was levied, a petition seeking a levy recall election was filed by the requisite number of taxpayers, including the appellees Siria and Mason, with the Clerk of Hopkins County Court. He, in turn, notified the Superintendent of the Hopkins County schools that the utility tax was subject to a recall election.

The Board objected to the holding of a recall election and sought relief in Hopkins Circuit Court. Arguing that the statutory recall provision was not applicable to minimum base funding or to Tier One funding, the Board sought to enjoin the election.

The circuit court determined that the recall provision is applicable when a utility

---

1. "Tier One funding," although not statutorily defined, is a term commonly used to describe the funding level created by the 1990 General Assembly immediately above the minimum funding level.

tax is levied and permitted the recall election to be held. The Board's efforts in this Court and in the Supreme Court to avoid an election were unsuccessful; and the utility tax was defeated by a three-to-one margin.

█ Pursuing its demand for a declaratory judgment holding that its action in imposing a utility gross receipts license tax is not subject to voter rejection, the Board initially argues that the trial court's interpretation of KRS 160.470(12) and KRS 157.-440(1), and their interrelation with KRS 160.597, is flawed in light of the Supreme Court's ruling in *Rose v. Council for Better Education, Inc., supra,* a decision which affirmed a lower court's finding of unconstitutional inefficiency in the funding of the state's common school system.

The Board and the Attorney General, an intervening appellant, argue that *Rose* supports their interpretation of KRS 160.470, 157.440 and 160.597. These statutes provide, in pertinent part, as follows:

*KRS 160.470(12)(a):* Notwithstanding any statutory provisions to the contrary, effective for school years beginning after June 30, 1990, the board of education of each school district *shall* levy a minimum equivalent tax rate of thirty cents (30) for general school purposes. Equivalent tax rate is defined as the rate which results when the income collected during the prior year from all taxes levied by the district for school purposes is divided by the total assessed value of property plus the assessment for motor vehicles certified by the Revenue Cabinet. * * * (Emphasis supplied.)

\* \* \* \* \* \*

*KRS 157.440(1)(a):* Notwithstanding any statutory provisions to the contrary, effective for school years beginning after July 1, 1990, the board of education of each school district may levy an equivalent tax rate as defined in subsection (12)(a) of KRS 160.470 which will produce up to fifteen percent (15%) of those revenues guaranteed by the program to support education excellence in Kentucky.

\* \* \* Effective with the 1990–91 school year, revenue generated by this levy shall be equalized at one hundred fifty percent (150%) of the statewide average per pupil assessment.

(b) The *rate* levied by a district board of education under the provisions of this subsection shall not be subject to the public hearing provisions of KRS 160.-470(10) or to the recall provisions of KRS 160.470(11). (Emphasis supplied.)

\* \* \* \* \* \*

*KRS 160.597:* Any school tax authorized by KRS 160.593 to 160.597, 160.601 to 160.633, and 160.635 to 160.648 may be recalled as follows:

(1) The order or resolution levying any of the school taxes designated heretofore in this section shall go into effect not less than thirty (30) days nor more than ninety (90) days after its passage. If, during the thirty (30) days immediately following the passage of the order or resolution, a petition signed by a number of registered and qualified voters equal to fifteen percent (15%), except in counties containing a city of the first class, equal to five percent (5%), of the votes cast in the school district or combined taxing district levying the tax for the office receiving the greatest total vote at the last preceding presidential election is presented to the county clerk requesting that the order or resolution of the tax be placed before the voters for approval, the order or resolution shall be suspended from going into effect for that district until after the election provided for in subsection (2) of this section.

\* \* \* \* \* \*

The utility gross receipts license tax levied by the Board is authorized by KRS 160.613 and KRS 160.614.[2] Thus, facially, the recall procedure contained in KRS 160.-597 is applicable, unless the "notwithstanding" provisions in KRS 160.470(12)(a) and 157.440(1)(a) remove taxes levied according to those statutes from the recall procedure.

---

**2.** KRS 160.613 provides for the imposition of a tax on the gross receipts derived from furnishing telephone and telegraphic services, electric power, water and gas within the county. KRS 160.614 adds cable television to the list of utilities.

**434**

The *Rose* decision, as we have said, resulted in the revamping of the state's common school funding system. KRS 160.470(12) is an add-on section to the pre-*Rose* statute and, with the exception of provisions related to the power equalization program, constitutes a reenactment of KRS 157.564(1). Under the previous funding scheme, voters were able to effect the recall of a property tax levy in excess of four percent of the preceding year's levy pursuant to KRS 160.470(11). Any permissive tax levy was subject to recall pursuant to KRS 160.597.

The 1990 change in KRS 160.470(10) and (11) prevents voter recall of a property tax levy if the tax revenue is intended to provide mandatory minimum base funding or permissive Tier One funding. Under the previous funding scheme, the "notwithstanding" language had no abrogative effect on voter recall of permissive utility taxes. We agree with the trial court that the General Assembly preserved this right in the post-*Rose* funding scheme. The specific nature of the permissive tax recall provision supplements the general "notwithstanding" provision. See *Land v. Newsome,* Ky., 614 S.W.2d 948 (1981).

The Board's argument as it pertains to KRS 157.440(1) is subject to the same analysis as is the issue regarding KRS 160.470(12)(a). KRS 157.440(1)(b) exempts Subsection (1)(a) of that statute from the recall of *property tax* levies to effect Tier One funding. The pre-*Rose* funding provision of the statute, when reenacted, was supplied with "notwithstanding" language; however, the recall exemption evinced by Section (1)(b) does not reflect a legislative intent to negate the recall provisions of KRS 160.597.

 The Board argues that the enactment of KRS 160.614 indicates that the General Assembly intended that the recall provisions of KRS 160.597 would not thereafter be applicable to utility taxes levied to provide base or Tier One funding. This statute merely expands the utilities subject to a permissive school funding levy to include cable television. In the absence of a strong statutory indication to the contrary, an express statute will not be deemed to have been abrogated by implication. *Head v. Commonwealth,* 165 Ky. 603, 177 S.W. 731 (1915).

The Board also relies on *Rose v. Council for Better Education, supra,* to support its argument that a utility gross receipts license tax used to provide Tier One funding is not subject to voter recall. This reliance is misplaced. *Rose* addresses the constitutionality of the prior funding scheme, but leaves to the General Assembly the task of enacting a funding mechanism to meet the constitutional mandate. *Rose* requires only that the General Assembly provide a method of school funding that complies with Section 183 of the Kentucky Constitution; and it chose the property tax as the unavoidable basis for such funding.

The present school funding statutes permit local boards of education to raise funds through property taxes and permissive taxes such as the utilities tax. Base funding and Tier One funding can be produced by a property tax not subject to voter recall. This non-recallable option enables boards of education to fund schools without relying on permissive taxes.

Whether the utility gross receipts license tax is preferable to the property tax as a means of providing Tier One funding is an issue which has been left to each school district's taxpayers. The General Assembly has supplied a mechanism to satisfy base funding, as well as Tier One funding, according to the mandate of Section 183 of the Kentucky Constitution; and that is all that *Rose* requires.

For the foregoing reasons, the order from which this appeal is taken is affirmed.

All concur.