Lannie SMITH, Plaintiff,

Commonwealth of Kentucky
Transportation Cabinet,
Intervening Plaintiff,

v.

The LOUIS BERKMAN COMPANY, Meyer Products, Inc., n/k/a The Louis Berkman Company, Defendants.

Civ. A. No. C93–0003–BG(H).

United States District Court,
W.D. Kentucky,
Bowling Green Division.

Aug. 16, 1995.

---

Steven D. Downey, Hixson, Downey & Travelsted, Bowling Green, KY, James M. Lawson, Clinton County Attorney's Office, Albany, KY, for plaintiff.

Charles P. Fulton, Ferreri & Fogle, Louisville, KY, for intervening plaintiff, Com. of Ky., Transp. Cabinet.

John David Cole, Cole, Moore & McCracken, Bowling Green, KY, for defendants.

## MEMORANDUM OPINION

HEYBURN, District Judge.

This case is before the Court on Defendants' Motion for Judgment as a Matter of Law and Motion for a New Trial. Defendants argue that the Court erred by allowing Plaintiff's strict liability claim to reach the jury and ask the Court to set aside the April 26, 1995 Judgment and sustain the motion for a directed verdict which Defendants renewed at the conclusion of the proof. In the alternative, Defendants request a new trial. This case requires the Court to address many of the difficult statutory and common law issues raised by post–1988 Kentucky product liability cases. For the reasons stated herein, Defendants' Motion for Judgment as a Matter of Law is denied and Defendants' Motion for a New Trial is sustained in part.

### I.

On January 16, 1992, Plaintiff Smith, an employee of Intervening Plaintiff Kentucky Department of Transportation ("KDOT"), dumped salt on icy roads, using a dump truck and a UTG 700 model under tailgate salt spreader manufactured by Defendants. After completing his task, Plaintiff returned to the Highway Maintenance Garage to clean the salt spreader and dump the unused salt into a storage bin. The spreader, which KDOT purchased in 1978, consisted of a rectangular box, approximately eight feet in length, one foot in width, and one foot in depth. The box had two hydraulically driven augers inside it. Plaintiff backed the truck to the storage bin and then tilted the bed of the truck to a point where it was about two feet above the chassis. Plaintiff then turned the dual augers on to clean the spreader box.

Plaintiff walked to the rear of the truck and observed a chain, which had come loose from its fitting on the dump truck, hanging down into the spreader box. To prevent the chain from being caught in the turning augers, Plaintiff instinctively reached down just above the augers, grasping the hanging chain. A burr on the spinning auger caught Plaintiff's glove and pulled his arm into the spreader box, causing severe injuries to Plaintiff's arm.

Plaintiff brought this lawsuit, alleging Defendants' liability for the design and manufacture of the salt spreader under the theories of strict liability and negligent failure to warn. Defendants asserted that Plaintiff was negligent with respect to his own safety. Defendants also argued that Intervening Plaintiff negligently failed to train Plaintiff adequately to operate the salt spreader and negligently altered or removed the warning labels from the salt spreader. At the conclusion of the parties' presentations of proof, Defendants moved for a directed verdict.

The Court found that the dual augers presented an open and obvious danger to users and accordingly, directed a verdict in Defendants' favor on Plaintiff's claim for negligent failure to warn. As a result, KDOT could not be found liable for altering or removing warnings from the salt spreader. Therefore, the Court also directed a verdict in favor of KDOT on the warnings issue. The jury returned a verdict of $855,699.81 for Plaintiff on the strict liability claim, finding Defendants 75 percent at fault and KDOT 25 percent at fault. The jury did not attribute any fault to Plaintiff, finding that he was not negligent as to his own safety.

Defendants now argue that judgment as a matter of law is appropriate because the Court erred when it allowed Plaintiff's strict liability claim to reach the jury. According to Defendants, the evidence at trial was not sufficient to support the jury's verdict for Plaintiff on the strict liability claim because Plaintiff offered no expert testimony on defective design or manufacture. Defendants also assert that they are entitled to a new trial because of the following errors: (1) the Court's failure to sustain their Motion in Limine to exclude the testimony of Plaintiff's expert, Gerald Rennell; (2) the Court's pretrial holding that the government contractor defense is inapplicable to Defendants; and (3) the jury's verdict finding no comparative fault by Plaintiff.

Questions posed at trial and thereafter in Defendants' motions require the Court to address many of the difficult statutory and common law issues in product liability cases that arose after 1988, the year in which the General Assembly codified comparative neg-

ligence into Kentucky tort law. The legislature did not repeal prior statutes, which set forth the contributory negligence standard. Kentucky courts have not had occasion to sort out the full scope of the changes made by the laws enacted in 1988.[1] The Court will attempt to clarify some of those changes now. In order to discuss the current status of the law, however, the Court must refer to a somewhat confused past.

## II.

At trial, Defendants argued that it was not responsible for Plaintiff's injuries because KDOT modified and altered some parts of the salt spreader. After purchasing the spreader from Defendants, KDOT (1) relocated a chain on the right tailgate, (2) modified a drive mechanism, (3) modified the attachment of the end plates, (4) replaced the original cover over the augers, (5) replaced the leveling bar, and (6) replaced the control valve. In support of their argument, Defendants cited KRS 411.320(1), which provides: "In any products liability action, a manufacturer shall be liable only for the personal injury ... that would have occurred if the product had been used in its original, unaltered and unmodified condition." Plaintiff and KDOT asserted that KDOT's modifications and alterations would not preclude De-

fendants' liability because the changes were not a substantial cause of Plaintiff's injury. The parties' arguments require the Court to consider whether KRS 411.320, the statute precluding manufacturer liability under certain circumstances, survives the enactment of the comparative fault standard in state tort law.

The General Assembly enacted KRS 411.320 in 1978, at which time the contributory negligence doctrine was followed in Kentucky. Part (3) of the statute codified contributory negligence in the product liability context, by providing that a plaintiff's negligence, when it constitutes a substantial cause of his injury, completely bars his product liability claim.[2] The first two provisions of KRS 411.320 specifically protect manufacturers from liability in cases where the product was altered or modified by any person or entity, and specifically by a plaintiff.[3]

In 1984, the Kentucky Supreme Court abolished contributory negligence and adopted the comparative fault approach to tort actions on the premise that liability should be limited to the extent of a party's fault. *Hilen v. Hays,* 673 S.W.2d 713, 717–19 (Ky.1984). In 1988, the General Assembly codified the comparative fault standard in KRS 411.182, which specifically includes products liability cases in its coverage.[4] The

---

1. The most recent Kentucky product liability cases involve incidents that occurred before 1988 and the adoption of comparative negligence in the jurisdiction. Because the 1988 statutes do not apply retroactively, Kentucky courts have considered only pre–1988 statutes and case law to render their decisions. The courts have mentioned the new statutes only to hold that they do not apply. This Court, therefore, must try to predict how the Kentucky courts would interpret the product liability law in cases in which the incident at issue occurred after the 1988 statute became effective.

2. KRS 411.320(3) states: "In any product liability action, if the plaintiff failed to exercise ordinary care in the circumstances in his use of the product, and such failure was a substantial cause of the occurrence that caused injury or damage to the plaintiff, the defendant shall not be liable whether or not said defendant was at fault or the product was defective."

3. KRS 411.320(1) provides: "In any product liability action, a manufacturer shall be liable only for the personal injury, death or property damage that would have occurred if the product had

been used in its original, unaltered and unmodified condition." The provision applies to "alterations or modifications made by any person or entity, except those made in accordance with specifications or instructions furnished by the manufacturer." Product alteration or modification includes "failure to observe routine care and maintenance," but does not include ordinary wear and tear.

KRS 411.320(2) provides: "In any product liability action, if the plaintiff performed an unauthorized alteration or an unauthorized modification, and such alteration or modification was a substantial cause of the occurrence that caused injury or damage to the plaintiff, the defendant shall not be liable whether or not said defendant was at fault or the product was defective."

4. KRS 411.182 provides:

In all tort actions, including products liability actions, involving fault of more than one party to the action, including third-party defendants and persons who have been released under subsection (4) of this section, the court, unless otherwise agreed by all parties, shall instruct the jury

legislature, however, did not repeal or otherwise comment on the existing statutes that codified contributory negligence. To clear up one uncertainty the Kentucky Court of Appeals did conclude that KRS 411.182 supersedes KRS 411.320(3), which recites the contributory negligence standard in products cases. *Ingersoll–Rand Co. v. Rice*, 775 S.W.2d 924, 930 (Ky.App.1988). Kentucky courts have not had occasion to address whether KRS 411.182 also supersedes KRS 411.320(1) and (2).

■ When construing conflicting or apparently conflicting statutes, the court must endeavor to ascertain and follow legislative intent and in doing so, consider the subject matter, necessity, or lack of necessity of giving effect to both or all sections of such statutes. *Washburn v. Paducah Newspapers*, 121 S.W.2d 911, 914 (Ky.1938). Courts may not presume that the legislature intended a useless or futile thing. *Id.*

■ Apparent conflicts or repugnancies between statutes on the same general subject and enacted at different times should be reconciled in light of the existing statutes and the Constitution. *Brown v. Hoblitzell*, 307 S.W.2d 739, 744 (Ky.1956). If the statutes are irreconcilable or repugnant to each other or if the subsequent statute covers the whole subject matter of the former statute and is manifestly intended as a substitute, the court may deem the former statute repealed by implication. *Dreidel v. City of Louisville*, 105 S.W.2d 807, 808 (Ky.1937). In either case, the intention of the legislature to repeal must be clear and manifest because repeals by implication are disfavored under the law. *Hopkins County Bd. Of Educ. v. Brooks*, 824 S.W.2d 431, 434 (Ky.App.1992).

■ KRS 411.320 indicates the Kentucky legislature's intent to benefit product manufacturers by precluding their tort liability when their products are modified or altered by someone else. The Court must now consider whether the enactment of KRS 411.182 manifests an intent to replace those benefits with another statutory system.

■ KRS 411.182 expressly covers "all tort actions, including products liability actions, involving fault of more than one party to the action." Therefore, the legislature intended that the statute cover the whole subject matter of the former statute, KRS 411.320, which governs only product liability actions. Moreover, 411.182 sets forth the comparative fault standard, a different method of determining tort liability than that expressed in the prior statute. A statute accomplishing the purpose intended to be accomplished by the previously enacted statute, but by obviously different methods and in a different manner, supersedes and repeals the earlier statute. *Washburn v. Paducah Newspapers*, 121 S.W.2d at 914. The Court finds that the General Assembly manifested in the statute its intention to substitute KRS 411.182 for 411.320. Therefore, the court deems the earlier statute repealed by implication.

In addition, KRS 411.320(2) is irreconcilable with current law. KRS 411.320(2) provides that a defendant in any product liability action is not liable, regardless of whether the defendant was at fault or the product was defective, if the plaintiff performed an unauthorized modification on the product, which was a substantial cause of the occurrence that resulted in injury or damage to the plaintiff. When both the plaintiff's modifica-

to answer interrogatories or, if there is no jury, shall make findings indicating:

(a) The amount of damages each claimant would be entitled to recover if contributory fault is disregarded, and

(b) The percentage of total fault of all the parties to each claim that is allocated to each claimant, defendant, third-party defendant, and person who has been released from liability under subsection (4) of this section.

(2) In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of

the causal relation between the conduct and the damages claimed.

(3) The court shall determine the award of damages to each claimant in accordance with the findings, subject to any reduction under subsection (4) of this section, and shall determine and state in the judgment each party's equitable share of the obligation to each claimant in accordance with the respective percentages of fault.

(4) A release, covenant not to sue, or similar agreement entered into by a claimant and a person liable, shall discharge that person from all liability for contribution, but it shall not be

tion and the defendant's actions played a substantial role in causing the plaintiff's injury, the comparative fault doctrine demands that fault and thus damages be apportioned among the tortfeasors. The plain language of KRS 411.320(2) does not permit such a result. Instead, it is consistent with comparative fault only when plaintiff's fault alone causes the injury at issue in the case.[5]

▆ The result is the same in regard to KRS 411.320(1), which mirrors 411.320(2) but applies more broadly to alterations to the product made by any person or entity. Subsection (1) provides that a manufacturer shall be liable only for the injury that would have occurred if the product had been used in its original, unaltered and unmodified condition. Any person or entity's unauthorized alteration or modification to the product that constitute a substantial cause of the plaintiff's injury allows the manufacturer to escape liability. Again, the statute and the comparative fault standard are harmonious only if the nonparty's alteration or modification is the sole cause of the plaintiff's injury. When the manufacturer is also a tortfeasor, subsection (1) allows him to avoid liability, in contravention with the comparative fault standard. A statute that forgives the liability of manufacturers is manifestly contradictory to the purposes of the comparative fault system. Accordingly, the Court finds that KRS 411.182 also supersedes KRS 411.320(1) and that Defendants' defense of modification is unavailable.

### III.

At trial, Defendants also asserted that the salt spreader was presumptively not defective because the accident involving Plaintiff did not occur until fourteen years after KDOT purchased the product and because the salt spreader conformed with the state of the art at the time of its manufacture. In making this argument, Defendants relied upon KRS 411.310, enacted in 1978, which establishes a presumption that a product is

not defective if the injury at issue occurred either more than five (5) years after the date of sale to the consumer or more than eight (8) years after the date of manufacture. A product is also presumed non-defective if the design, methods of manufacture, and testing conformed to the generally recognized and prevailing standards or the state of the art in existence at the time the design was prepared, and the product was manufactured. Both of these presumptions may be rebutted by a preponderance of the evidence to the contrary.

▆ The Court concludes that, KRS 411.310, though enacted before the jurisdiction adopted comparative negligence, does not contradict the principles underlying the comparative negligence doctrine. Rather, the statute is conceptually similar to a statute of repose, which limits potential liability by limiting the time during which a cause of action can arise. Accordingly, the presumptions established by the statute remain intact for product liability cases arising from incidents that occur after 1988. Defendant received the benefit of that presumption at trial. Plaintiffs introduced evidence of the salt spreader's defectiveness, which rebutted the presumption. Once the presumption was rebutted, the issue went to the jury to decide on the evidence presented.

### IV.

▆ At trial, Plaintiff argued that a duty to warn users of the danger presented by the turning augers on the salt spreader arose after the sale, when accidents similar to Plaintiff's occurred and became known to Defendants. Kentucky courts have not decided whether to adopt the principle of a continuing duty to warn after sale. *C & S Fuel*, 552 F.Supp. at 348, n. 20. Other courts have held that after a product has been sold and dangerous defects in design have come to the manufacturer's attention, the manufacturer has a duty to remedy the defects or, if

---

considered to discharge any other persons liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons shall be reduced by the amount of the released person's equitable share of the obligation, determined in accordance with the provisions of this section.

**5.** If a plaintiff's unauthorized modification of a product was the only substantial cause of his

injury, then a defendant manufacturer cannot be held responsible because his fault or the product's defect did not cause the plaintiff's injury. In other words, because KRS 411.320(2) would release a manufacturer from liability if its fault did not cause the injury, the statute does not conflict with the comparative fault standard, which would also preclude the imposition of liability on a manufacturer absent causation.

complete remedy is not feasible, at least to give users adequate warnings and instructions concerning methods for minimizing the danger. *Braniff Airways, Inc. v. Curtiss–Wright Corp.*, 411 F.2d 451, 453 (2nd Cir. 1969).

■ A continuing duty to warn may arise after manufacture or distribution, where something changes about the product, the experience with its use, or the knowledge of the manufacturer or user. This duty may arise if the manufacturer learns of significant product failures or unexpected and dangerous uses. The duty could also arise if a high accident rate demonstrates that a danger thought to be obvious is not being recognized by users. The issue is whether the manufacturer knew of an increased risk for any reason. *Watters v. TSR, Inc.*, 904 F.2d 378, 381 (6th Cir.1990). As a consequence, requiring the manufacturer to undertake the duty to notify users of such new developments may be warranted. The manufacturer may be the best informed and best equipped entity to take on the responsibility of warning users of its product. A jury should decide whether the failure to warn on a continuing basis constitutes negligence.

■ The continuing duty to warn theory, however, does not apply to this case. Even if the proof established that Defendants knew about accidents similar to Plaintiff's in the years prior to Plaintiff's injury, Defendants would have no duty to warn of the danger. The physical danger presented to users by the turning augers was obvious in 1978 when the salt spreader was manufactured and sold. The same danger presented itself thereafter. There were no new uses of the machine that revealed previously unknown defects or risks. The salt spreader did not malfunction

to cause Plaintiff's injury. Accordingly, the Court granted Defendants a directed verdict on Plaintiff's negligence claim and did not instruct the jury on a continuing duty to warn.

**V.**

■ When, as in this case, the claim is strict liability alone, warning is only one factor for a jury to consider in its ultimate determination of whether a product was manufactured in a "defective condition unreasonably dangerous" and should not be singled out for consideration in the instructions. *Ingersoll–Rand Co.*, 775 S.W.2d at 932. Other factors include deviation from industry standards, obviousness of the danger, consumer knowledge, weighing of risks against benefits, feasibility of making a safer product, subsequent maintenance and repair, misuse, the products' inherently unsafe characteristics, and other factors, depending on what is relevant in each particular cause of action. *Nichols*, 602 S.W.2d at 433; *Montgomery Elevator Co. v. McCullough*, 676 S.W.2d 776, 780–81 (Ky.1984); *Tobin v. Astra Pharmaceutical Products, Inc.*, 993 F.2d 528, 536–37 (6th Cir.1993).

■ Kentucky requires trial courts to provide bare bones jury instructions, which can be fleshed out by counsel in their closing arguments, if they so desire. *Cox v. Cooper*, 510 S.W.2d 530, 535 (1974). Trial courts should be careful not to emphasize certain points in the law over others or misstate the issue when trying to spell it out. *Ford Motor Co. v. Fulkerson*, 812 S.W.2d 119, 123 (Ky.1991). Therefore, the instructions to the jury issued in this case do not mention the specific factors mentioned above.[6]

---

**6.** The jury received the following strict liability instruction:

In this case, Plaintiff claims that the design and manufacture of the 1978 UTG 700 under tailgate salt spreader was defective and unreasonably dangerous.

You will find for Plaintiff if you are satisfied from the evidence that:

(1) the 1978 UTG 700 under tailgate salt spreader was defective and unreasonably dangerous for use, and

(2) the defective design and manufacture was a substantial factor in causing the accident and injury to Plaintiff.

Otherwise, you will find for Defendant on this issue.

As the term is used in this instruction, a product is "defective and unreasonably dangerous" if it creates such a risk of injuring its user that an ordinarily prudent manufacturer of salt spreaders, being fully aware of the risk, would not have put it on the market. In considering whether an ordinarily prudent company would put this product on the market, you must find that there existed an alternative feasible design and that a reasonably prudent manufacturer would have used this

## VI.

Defendants now seek judgment as a matter of law on the ground that the Court erred when it allowed Plaintiff's strict liability claim to reach the jury. Because Plaintiff failed to offer expert testimony on the salt spreader's alleged defective design or manufacture, Defendants argue that the evidence was not sufficient to support the jury's verdict in Plaintiff's favor.[7] The Court permitted Gerald Rennell, Plaintiff's expert, to testify about product safety but excluded his testimony on the salt spreader's manufacturing and design. Defendants assert that their experts, Robert Henderson and Charles Smick, testified that the salt spreader was not defective. Defendants claim that Plaintiff failed to rebut this evidence and accordingly, the Court should have directed a verdict in Defendants' favor rather than allow the jury to decide the issue.

■ The Court may grant a judgment as a matter of law in favor of Defendants if during the trial Plaintiff was fully heard on an issue and there was no legally sufficient evidentiary basis for a reasonable jury to find for Plaintiff on that issue. Fed.R.Civ.P. 50(a)(1). The Court does not weigh the evidence, evaluate the credibility of the witnesses, or substitute its judgment for that of the jury. *Tarrant Service Agency v. American Standard, Inc.,* 12 F.3d 609, 613 (6th Cir.1993). Instead, the Court must view the evidence in the light most favorable to the non-moving party, Plaintiff in this case, and give him the benefit of all reasonable inferences. *Id.* The motion should be granted if reasonable minds could not come to a conclusion other than one in favor of Defendants. *Id.*

■ Mr. Rennell has classroom training in safety engineering at the General Motors Institute and on-the-job training with the Pontiac Motor Division of GM. He also worked for an insurance company as a loss control consultant, checking insured machines to ensure that they were reasonably safe and adequately guarded and advising insureds about guarding mechanisms for their machines. Since 1977, Mr. Rennell has worked as an independent consultant on machine guarding. He inspected a salt spreader with Defendants' twin auger and reviewed relevant manuals, brochures, and documentation. Thus, the Court found that Mr. Rennell was qualified to give his opinion about the salt spreader's guarding system. The Court finds no reason to reverse that decision now.

■ Gerald Rennell testified within his knowledge and expertise as to several unreasonably dangerous qualities of the spreader. Rennell's lack of manufacturing and design expertise does not prevent him from testifying about his personal knowledge of other safer spreader designs marketed contemporaneously with the spreader in question. Among other things, his testimony addressed precisely these legitimate points. Moreover, the salt spreader is an inherent dangerous machine, given its function and its large moving parts. That danger is obvious to any bystander. The jury inspected a salt spreader similar to the one involved in Plaintiff's accident. Because a reasonable jury could have reasoned that the salt spreader was defective and that Defendants were liable for that defect, Defendants' Motion for Judgment as a Matter of Law is denied.

## VII.

In addition, Defendant has moved for a new trial on the following grounds: (1) the Court erred in failing to sustain Defendant's motion in limine to exclude in its entirety the testimony of Plaintiff's expert, Gerald Rennell; (2) in a pretrial order, the Court erred when it held that the government contractor

---

alternative. A manufacturer is not required to design the best possible salt spreader, or one as good as others make, or a better product than it has, so long as the product is reasonably safe. The manufacturer is not a guarantor that nobody will get hurt in using the product, and a product is not defective or unreasonably dangerous merely because it is possible to be injured while using it. What the manufacturer is required to do is to make a product which is free from defective and unreasonably dangerous conditions.

7. Defendant raises substantially the same issue in its motion for a new trial on the grounds that the Court erred in failing to sustain Defendant's motion to exclude Rennell's expert testimony.

defense is inapplicable to this case; and (3) the jury verdict finding no comparative fault by Plaintiff is contrary to the evidence and to the law. The Court has previously discussed its disposition of Rennell's testimony.

The Court determines whether a new trial is warranted according to its sound discretion. *Hopkins v. Coen,* 431 F.2d 1055, 1059 (6th Cir.1970). Grounds for a new trial include judicial error, an event occurring during trial that unduly prejudiced the moving party, or a verdict clearly against the weight of the evidence.

### A.

In their Motion for Summary Judgment, Defendants asserted that they were not liable for any alleged defects in the product because the salt spreader satisfied the bid specifications set forth by KDOT. The Court held that the government contractor defense did not apply to Defendants because the theoretical support for the defense lies in a conflicting relationship between federal and state law, which did not exist in this case. Defendants now challenge the Court's determination.

The government contractor defense, a creation of federal law, displaces state law in areas of "significant conflict" between an identifiable federal policy or interest and the operation of state law when state law acts to frustrate specific objectives of federal legislation. *Boyle v. United Technologies Corp.,* 487 U.S. 500, 507, 108 S.Ct. 2510, 2516, 101 L.Ed.2d 442 (1988). This condition may exist, for example, where state tort law holds a government contractor liable for design defects in military equipment manufactured in compliance with "reasonably precise specifications" imposed by the federal government. *Landgraf v. McDonnell Douglas Helicopter Co.,* 993 F.2d 558, 559 (6th Cir.1993). Such liability would affect directly the terms of government contracts. *Boyle,* 487 U.S. at 507, 108 S.Ct. at 2516.

In this case, however, the state government determined the bid specifications for the spreader machine. Moreover, Kentucky has waived its sovereign immunity to tort suits by statute. KRS 44.070. Therefore, no conflict between state tort law and governmental immunity exists in this case as in *Boyle* and its progeny. The fact that Defendants met the bid specifications set by the state, therefore, does not preclude a product liability suit against them. Accordingly, the Court did not err in holding that Defendants may not discount its liability under the government contractor theory.

### B.

Lastly, Defendants argue that they are entitled to a new trial because the jury's verdict that Plaintiff was not negligent in regard to his own safety was clearly against the weight of the evidence. When faced with a challenge directed at the weight of the evidence, the trial court's obligation is to compare the opposing proofs, weigh the evidence, and set aside the verdict if it finds that the verdict is against the clear weight of the evidence. *Porter v. Lima Memorial Hosp.,* 995 F.2d 629, 635 (6th Cir.1993). The Court should deny the motion if the jury reasonably could have reached the verdict. *Id.* The verdict should not be considered unreasonable simply because different inferences could have been drawn or because other results are more reasonable. *Id.*

Tort law imposes upon each individual a duty to exercise ordinary care for his own safety. A risk of injury may be so obvious that an individual must be charged with knowledge of the danger. *Isbell v. Union Light, Heat & Power Co.,* 162 F.Supp. 471, 477 (E.D.Ky.1958). An individual who exposes himself to a known danger that is imminent and obvious to a person of ordinary prudence has acted negligently as a matter of law. *Id.; see Beasley v. Standard Paving and Engineering Co., Inc.,* 511 S.W.2d 667, 669 (Ky.App.1974). In this case, the danger imposed by the turning augers of the salt spreader would have been obvious to a person of ordinary prudence. Plaintiff would have an even greater awareness of the risk because he had ten years of experience at KDOT working with that salt spreader model. Furthermore, Plaintiff admitted his mistake during his testimony. The inadvertence of the mistake does not change the fact that

Plaintiff's lack of care led to his injury. Guided only by the ordinary prudence standard, the Court finds that the verdict was so unreasonable that a new trial is required.

 Where a distinct and severable issue is to be decided, a limited retrial of that issue alone is appropriate unless such a retrial would result in injustice. *Deutsch v. Shein*, 597 S.W.2d 141, 146 (Ky.1980). At a new trial the jury must reconsider Plaintiff's liability and that of the Defendants and the comparative fault of all the parties. The parties did not dispute the amount of damages at trial and have not disputed the jury's determination of damages. Therefore, no new trial on damages is necessary.

In sum, Defendants' Motion for Judgment as a Matter of Law is denied and Defendants' Motion for a New Trial is sustained. The Court is entering an Order consistent with this Opinion.

### ORDER

This case is before the Court on Defendants' Motion for Judgment as a Matter of Law and Motion for a New Trial. Having considered the parties arguments, having issued a Memorandum Opinion, and otherwise being sufficiently advised,

IT IS HEREBY ORDERED that Defendants' Motion for Judgment as a Matter of Law is DENIED.

IT IS FURTHER ORDERED that Defendants' Motion for a New Trial is SUSTAINED.

IT IS FURTHER ORDERED that Magistrate Judge John Dixon shall convene a settlement conference among the parties.

IT IS FURTHER ORDERED that the parties shall have thirty (30) days in which to move for amendment of this entire Order.