TARRANT SERVICE AGENCY, INC., Plaintiff–Appellant, Cross–Appellee,

v.

AMERICAN STANDARD, INC., d/b/a The TRANE COMPANY, Defendant–Appellee, Cross–Appellant.

Nos. 92–6699, 93–5043.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 15, 1993.

Decided Dec. 30, 1993.

Wesley A. Gersh (argued and briefed), Gary W. Anderson, H.E. Bornstein, Louisville, KY, for plaintiff-appellant cross-appellee.

Michael Kirk, Wyatt, Tarrant & Combs, Louisville, KY, Mitchell F. Dolin, Thomas Barnett (briefed), John H. Schafer (argued and briefed), Covington & Burling, Washington, DC, Edgar A. Zingman, Wyatt, Tarrant & Combs, Louisville, KY, for defendant-appellee cross-appellant.

Before: KENNEDY, MILBURN, and GUY, Circuit Judges.

KENNEDY, Circuit Judge.

Plaintiff, Tarrant Service Agency ("Tarrant"), appeals the District Court's order granting defendant, American Standard, Inc., d/b/a The Trane Company ("Trane"), judgment as a matter of law after the jury had returned a verdict for Tarrant in this action for monopolization and attempted monopolization. Although the District Court granted Trane judgment as a matter of law on these

claims, Trane cross-appeals the District Court's refusal to grant Trane's alternative motion for a new trial on the monopolization and attempted monopolization claim. Tarrant also appeals the District Court order granting Trane summary judgment on its conspiracy to monopolize claim and its group boycott claim.

Trane cross-appeals the District Court's denial of judgment as a matter of law for Trane, after the jury returned a verdict for Tarrant, on Trane's counterclaim for trademark infringement and unfair competition. Trane also appeals the District Court's refusal to submit Trane's copyright infringement counterclaim to the jury. For the reasons stated below, we affirm in part and remand in part.

## I.

Trane manufactures and sells commercial and industrial heating, ventilating and air conditioning ("HVAC") equipment. Trane sells Trane genuine parts necessary for the repair of its equipment through Commercial Sales Offices ("CSOs") which are located throughout the United States. Some CSOs are owned by Trane and others are independently-owned franchises. The CSOs sell repair parts and also repair Trane equipment. Trane also sells a small amount of Trane genuine parts through its national parts outlet. The ultimate purchasers of these repair parts are the owners of Trane's equipment who repair their equipment and independent service contractors who service Trane and other equipment.

Tarrant is a mail-order parts business which sells genuine and duplicator parts strictly for the service and repair of Trane's commercial HVAC equipment. Tarrant does not repair HVAC equipment itself. Tarrant previously bought Trane genuine parts from the CSOs and then directly competed with the CSOs by selling parts to service contractors and owners of Trane equipment.

Three categories of parts exist which are used in the servicing and repair of Trane equipment. First, there are Trane genuine parts which are produced or sold by Trane itself. Second, there are duplicator parts which are specifically engineered as substitutes for Trane genuine parts but are made by manufacturers other than Trane. Duplicator parts are not interchangeable with parts for other brands of HVAC equipment, but are available from a variety of manufacturers. The third category of parts used in Trane equipment repair is generic parts. Generic parts are used in Trane equipment and other manufacturer's equipment, and for numerous other purposes. These generic parts are available from numerous sources.

From 1987 until September 1990, Tarrant purchased Trane genuine parts from Trane CSOs. However, in September 1990, Trane unilaterally instituted a broker policy which forbade the CSOs from selling to anyone that Trane classified as a broker.[1] Trane reserved the right to sell to such brokers itself. Initially, Trane classified Tarrant as a broker but refused to sell to Tarrant itself because it believed Tarrant was passing off duplicator parts as genuine Trane parts. Additionally, Trane was concerned that Tarrant was a free-rider. Trane believed that Tarrant was a free-rider because Tarrant sought to sell Trane genuine parts at wholesale in competition with Trane's distribution system. Trane believed Tarrant was exploiting the cost advantage it had over CSOs as Tarrant would not maintain inventories or other sales presence in the local market.

Although Tarrant increased its sale of duplicator parts, Tarrant wanted to buy Trane genuine parts. Because Tarrant was unable to buy genuine parts, it instituted this antitrust action. Tarrant claims that Trane monopolized the distribution of parts for repair of Trane equipment and that Trane violated section two of the Sherman Act by initiating the broker policy and refusing to sell Trane genuine parts to Tarrant. Tarrant also claimed that Trane violated section one of the Sherman Act because Trane conspired with independently-owned CSOs to restrain trade

---

1. Trane defined a broker as, "[a] purchaser of Trane parts which engages principally in the resale of such parts on the basis of regional or national solicitation of mail or telephone orders, using third party delivery services ... without providing point-of-sale services to the customer." Defendant's Brief at 7–8.

in the relevant market. Furthermore, Tarrant contends that Trane and its CSOs effectuated a group boycott in violation of section one of the Sherman Act.

Prior to trial, the District Court granted Trane's summary judgment motion on the section one claims, finding no evidence of an agreement or a combination. Tarrant's section two claims were tried to the jury and the jury returned a verdict for Tarrant.[2] After the jury returned the verdict, Trane moved for judgment as a matter of law and in the alternative for a new trial. The District Court granted Trane judgment as a matter of law; however, the District Court denied without explanation Trane's alternative motion for a new trial. The District Court reasoned that *International Logistics Group, Ltd. v. Chrysler Corp.*, 884 F.2d 904 (6th Cir.1989), *cert. denied*, 494 U.S. 1066, 110 S.Ct. 1783, 108 L.Ed.2d 784 (1990), dictated judgment as a matter of law for Trane. On the basis of *Chrysler*, the District Court apparently concluded that Trane could not be liable for an antitrust violation when it only monopolized the distribution of its own brand of parts. The District Court noted it was aware of *Eastman Kodak Co. v. Image Technical Servs., Inc.*, —— U.S. ——, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992), but concluded that *Kodak* was inapplicable to the case *sub judice*.

Additionally, the jury returned a verdict for Tarrant on Trane's counterclaims for trademark and unfair trade practices.[3] Trane also moved for judgment as a matter of law on these claims or in the alternative for a new trial. The District Court denied Trane's motion.

2. The jury made the following findings:
Do you unanimously find by a preponderance of the evidence that defendant American Standard, Inc., doing business as the Trane Company (Trane), has attained monopoly power in the relevant product market?
Jury: Yes.
Do you unanimously find by a preponderance of the evidence that Trane has attempted to monopolize the relevant product market?
Jury: Yes.
Do you unanimously find by a preponderance of the evidence that defendant Trane had the

## II.

■ This Court reviews a court order granting judgment as a matter of law under the same standard that the District Court used. *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1023 (6th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 175, 126 L.Ed.2d 135 (1993).

> We do not weigh the evidence, evaluate the credibility of the witnesses, or substitute our judgment for that of the jury. Instead, we must view the evidence in the light most favorable to the party against whom the motion is made, and give that party the benefit of all reasonable inferences. The motion should be granted, and we should affirm if reasonable minds could not come to a conclusion other than one in favor of the movant.

*Id.* (citations omitted).

## III.

■ Section two of the Sherman Act prohibits illegal monopolization. Illegal monopolization consists of "(1) possession of monopoly power in the relevant market; and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen or historic accident." *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1704, 16 L.Ed.2d 778 (1966).

■ The jury concluded that Trane had engaged in illegal monopolization but the District Court granted Trane judgment as a matter of law relying on *Chrysler*, 884 F.2d at 904. In its decision, the District Court relied on the following statement from *Chrysler*,

> power by reason of its monopoly or attempted monopoly to exclude competition whenever they desired to do so?
> Jury: Yes.

3. With regard to the counterclaims, the jury made the following findings:
Do you unanimously find by a preponderance of the evidence that Tarrant infringed at any time upon the trademark Trane, Centravac or the Trane logo?
Answer: No.

Obviously, Chrysler's sales to its dealers must be immediately excluded from the definition of relevant product market in the instant case. Chrysler could have unilaterally required its franchised dealers to purchase their parts exclusively from Chrysler. Thus the dealer market existed at Chrysler's option. Chrysler could not be charged with restraining trade in this market.... A manufacturer is entitled to the benefits of maintaining a "monopoly" over products which it has developed and produced. Indeed, if manufacturers were denied a monopoly over their own unique products, the incentives for innovation and development of beneficial products would be stifled. Accordingly, Chrysler committed no § 2 Sherman Act violation when it implemented its marketing programs for its Power Master engines or its own manufactured parts. *Monopolization of a single brand is not an antitrust violation.*

*Id.* at 908 (citations omitted) (emphasis added).

On appeal, Tarrant argues that Trane has unlawfully monopolized a single brand, Trane genuine parts. Further, Tarrant argues that the District Court's reliance on *Chrysler* was erroneous as monopolization of a single brand can constitute an antitrust violation under the Supreme Court's recent decision in *Kodak,* —— U.S. at ——, 112 S.Ct. at 2072.

In *Kodak,* plaintiffs, independent service organizations ("ISOs"), repaired and serviced Kodak copying machines and micrographic equipment, sold Kodak parts and sold used Kodak equipment. Kodak's photocopier and micrographic equipment is unique and Kodak parts are not compatible with equipment made by other manufacturers. *Id.* at ——, 112 S.Ct. at 2077. Defendant Kodak also provided service and parts for its machines to its customers. Kodak adopted policies which limited the sale of replacement parts for its equipment to "buyers of Kodak equipment who use Kodak service or repair their own machines," and limited the ISOs' access to other sources of Kodak parts. *Id.* at —— – ——, 112 S.Ct. at 2077–78. The ISOs brought an antitrust action alleging that Kodak violated section one of the Sherman Act with its illegal tying practices and violated

section two of the Sherman Act through its unlawful monopolization and attempted monopolization of Kodak parts. *Id.* at ——, 112 S.Ct. at 2075. With regard to the section two claim, Kodak argued that monopoly power did not exist because a single brand of a product can never constitute a relevant product market under the Sherman Act. The Supreme Court rejected Kodak's proposition stating:

> Because service and parts for Kodak equipment *are not interchangeable* with other manufacturers' service and parts, *the relevant market from the Kodak-equipment owner's perspective is composed of only those companies that service Kodak machines.* This Court's prior cases support the proposition that in some instances one brand of a product can constitute a separate market.

*Id.* at ——, 112 S.Ct. at 2090 (citations omitted) (emphasis added).

■ Clearly, one brand of a product can constitute the relevant market when the product is unique and no reasonable substitutes exist. However, the case before us is not such a case. Three categories of parts exist which are used in the servicing and repair of Trane equipment: Trane genuine parts, duplicator parts, and generic parts. Thus, this case does not represent one of those circumstances where a single product constitutes a relevant market.

■ Next, Tarrant argues that even if this is not a case of single brand monopolization, then the relevant market only includes Trane genuine parts and duplicator parts. To support its exclusion of generic parts, Tarrant points to the following quote from *United States v. E.I. du Pont de Nemours & Co.,* 351 U.S. 377, 76 S.Ct. 994, 100 L.Ed. 1264 (1956), "[i]n considering what is the relevant market for determining the control of price and competition, no more definite rule can be declared than that commodities reasonably interchangeable by consumers *for the same purposes* make up that 'part of the trade or commerce' monopolization of which may be illegal." *Id.* at 395, 76 S.Ct. at 1007 (emphasis added). Tarrant argues that generic parts should not be included within the relevant market because generic parts, by defini-

tion, are produced and sold for different uses. Thus, generic parts cannot satisfy the "reasonably interchangeable by consumers for the same purposes" test.

■ Contrary to Tarrant's contention, parts need not be peculiar to a market in order to be part of a relevant market. Although generic parts can be used for a multitude of different purposes, they can certainly be used for the same purpose of repairing Trane products. Thus, generic parts have reasonable interchangeability with Trane genuine parts for the purpose of repairing Trane equipment and are part of the relevant market.

■ Next, Tarrant must prove the existence of monopoly power within the relevant market of Trane genuine parts, duplicator parts and generic parts. Monopoly power within the relevant market is "the power to control prices or exclude competition." *Grinnell*, 384 U.S. at 571, 86 S.Ct. at 1704. *See also Byars v. Bluff City News Co.*, 609 F.2d 843, 850 (6th Cir.1979) ("The material consideration in determining whether a monopoly exists, is not that prices are raised and that competition is excluded, but that power exists to raise prices or to exclude competition when it is desired to do so.").

Courts often look at market share as a short cut to determine if monopoly power exists. *Id.* Tarrant's evidence of monopoly power limited the market to genuine and duplicator parts. Thus, Tarrant did not produce evidence of Trane's market share in the relevant market and Tarrant cannot rely on market share as an indicator of monopoly power.

Tarrant alternatively argues that even if Trane does not have sufficient market share to infer monopoly power, other evidence exists of Trane's monopoly power. Specifically, witnesses testified that service contractors will be paying higher prices for Trane genuine parts in the absence of meaningful competition from Tarrant. Thus, Tarrant argues this evidence illustrates Trane's monopoly power. This argument ignores the fact that the relevant market includes Trane genuine parts, duplicator parts and generic parts. Tarrant has not produced evidence that

Trane has the ability to control prices of duplicator parts produced by other manufacturers or the prices of generic parts. Additionally, Tarrant has not produced evidence that Trane has the power to exclude competition in either generic parts or duplicator parts. Thus, Tarrant failed to produce evidence of the relevant market and Trane's alleged monopoly power within the relevant market which would present an issue of fact for the jury. For these reasons, we affirm the District Court's order granting judgment as a matter of law for Trane on the monopolization claim. Because we have affirmed the District Court's order on the monopolization claim, we decline to address Trane's other arguments in support of the District Court's decision.

## IV.

■ Tarrant also appeals the District Court's order granting judgment as a matter of law to Trane on Tarrant's attempted monopolization claim. A claim for attempted monopolization under section two of the Sherman Act requires: (1) a specific intent to monopolize; (2) anti-competitive conduct; and (3) a dangerous probability of success. *See Arthur S. Langenderfer, Inc. v. S.E. Johnson Co.*, 917 F.2d 1413, 1431 (6th Cir. 1990), *cert. denied,* — U.S. —, 112 S.Ct. 51, 116 L.Ed.2d 29 (1991).

■ As a matter of law, the plaintiff has failed to establish the third element of its attempted monopolization claim.

The third element of attempted monopolization is a dangerous probability of success. The greater a firm's market power the greater the probability of successful monopolization. In order to be found liable for attempted monopolization, a firm must possess market strength that approaches monopoly power—the ability to control prices and exclude competition.

*Richter Concrete Corp. v. Hilltop Concrete Corp.*, 691 F.2d 818, 826 (6th Cir.1982).

Market strength is often indicated by market share. However, as stated, Tarrant has failed to produce evidence of Trane's market share in the relevant product market. Furthermore, Tarrant has not produced any oth-

er evidence that Trane was capable of, much less achieved, a dangerous probability of success in destroying competition in the relevant product market or controlling prices.

Consequently, we affirm the District Court's order granting judgment as a matter of law for Trane on the attempted monopolization claim.

## V.

■ The District Court granted Trane's post-trial motion for judgment as a matter of law but denied Trane's motion for new trial.

Under Fed.R.Civ.P. 50(c)(1),

[i]f the renewed motion for judgment as a matter of law is granted, the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed, and shall specify the grounds for granting or denying the motion for the new trial.

In the case *sub judice,* the District Court granted Trane's motion for judgment as a matter of law and denied Trane's motion for a new trial. However, the District Court failed to specify the grounds for denying the motion. Because the District Court failed to set forth its reasons for the denial, we would ordinarily remand to the District Court for such findings. However, because we affirm the District Court's order granting judgment as a matter of law for Trane, remand on this issue is not necessary.

## VI.

Trane next argues that the District Court erred in its disposition of its counterclaims against Tarrant. Trane brought counterclaims for unfair competition under the Lanham Act and state common law, for trademark infringement, and for copyright infringement.

### A. *Copyright*

■ With respect to Trane's copyright claim, Trane asserted at trial that Tarrant infringed Trane's copyright when Tarrant copied Trane service literature for distribution to Tarrant's customers. The parties stipulated that Tarrant had copied Trane literature and therefore Trane had proved a prima facie case of copyright infringement. The only issue raised at trial was whether Tarrant had a valid defense to copyright infringement.

The District Court refused to submit this claim to the jury and apparently did not dispose of this copyright claim. Therefore, we remand to the District Court for disposal of this claim.

### B. *Trademark Infringement and Unfair Competition*

■ At trial, Trane alleged that Tarrant had engaged in trademark infringement and unfair competition. On appeal, both sides argue that the District Court did not submit the Lanham Act unfair competition claims to the jury. While only a special interrogatory on the trademark infringement claim was submitted, the District Court clearly instructed the jury on the Lanham Act claims.[4] Thus, we conclude that the District Court did submit the majority of the unfair competition claims to the jury. Indeed, the evidence introduced on the trademark infringement claim and the unfair competition claim was virtually identical. On appeal, Trane argues that Tarrant created a likelihood of confusion among Tarrant's customers between duplicator parts and genuine parts. Trane argues that Tarrant achieved this confusion by representing that it had Preferred Parts for Trane equipment and by using a logo similar to Trane's. Additionally, Tarrant led its customers to believe they were receiving Trane brand genuine parts when the customers were actually receiving duplicator parts. Trane argues that Tarrant misled its custom-

4. The District Court stated:
 Section 43 of a federal statute known as the Lanham Act provides in part as follows: Any person who in connection with any goods or services or any container for goods used in commerce any word, term, name, symbol or device or any combination thereof which is likely to cause confusion or to cause mistake or to deceive as to the affiliation such person [has] with another person or as to the origin of his or her goods or services or commercial activities by another person shall be liable in a civil action.

ers by "(1) using a parts numbering system virtually identical to that used by Trane, (2) using invoices that suggested all parts shipped were Trane-brand parts, and (3) charging customers the same price for its duplicator parts—which often cost Tarrant less to purchase—as for genuine Trane-brand parts." Defendant's Brief at 43. Tarrant defended this charge by asserting that its duplicator parts are shipped in different boxes than Trane genuine parts.

We conclude that the facts presented an issue for the trier of fact and reasonable minds could differ on the resolution of this claim. Therefore, we affirm the District Court's order denying Trane's motion for judgment as a matter of law on the trademark infringement claim and the unfair competition claims.

■ While the District Court did submit the majority of the unfair competition claims to the jury, we agree that the District Court's Lanham Act instruction cannot be construed as including Trane's unfair competition counterclaim based on Tarrant's misrepresentations.

At trial, Trane contended that Tarrant violated the Lanham Act by falsely representing that its duplicator parts "meet or exceed" Trane specifications without any evidence of this statement's veracity.[5] Tarrant defended this assertion by emphasizing that this statement was merely opinion or puffery and therefore not actionable under the Lanham Act. We conclude that the District Court's jury instruction on the Lanham Act cannot be interpreted as including the alleged separate violation of the Lanham Act for Mr. Grom's statement as the instruction did not refer to false or misleading statements of fact or misrepresentations. Thus, the jury did not dispose of Trane's counterclaim based on Tarrant's "meet or exceed" statement and therefore we remand to the District Court to determine the disposition of this claim.

## VII.

■ Section one of the Sherman Act provides, "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade . . . is . . . illegal. . . ." 15 U.S.C. § 1. A plaintiff must prove

> (1) that the antitrust defendant contracted, combined, or conspired; (2) that the combination or conspiracy produced adverse anticompetitive effects; (3) within relevant product and geographical markets; (4) that the objects of and conduct pursuant to that contract or conspiracy were illegal; and (5) that the plaintiff was injured as a proximate result of that conspiracy.

*Chrysler*, 884 F.2d at 907.

Tarrant argues that Trane conspired with the independent CSOs to eliminate Tarrant as a competitor to the CSOs by its implementation of the broker policy. The District Court granted a summary judgment against Tarrant on this claim, finding that Tarrant failed to produce evidence of a conspiracy or agreement. Tarrant now appeals the District Court's order.

■ We review a summary judgment order *de novo*, "making all reasonable inferences in favor of the nonmoving party to determine if a genuine issue of material fact" exists. *EEOC v. University of Detroit*, 904 F.2d 331, 334 (6th Cir.1990). We find that Tarrant has failed to produce any evidence of a conspiracy or combination. The record illustrates that the broker policy was unilaterally implemented by Trane. Indeed, the CSOs' acquiescence in this policy was not needed or sought. The CSOs' mere adherence to the broker policy does not illustrate the existence of a conspiracy. *See Chrysler*, 884 F.2d at 907. Consequently, we affirm the District Court's decision granting summary judgment against Tarrant on the conspiracy claim.

---

5. This statement arose during Trane's investigation of Tarrant's business practices. Trane's investigator pretended to be a parts customer involved in a federal project and asked Mr. Grom about Tarrant's duplicator parts. Specifically, the investigator wanted to know if Tarrant duplicator parts met "Trane specifications" because the investigator was working on a federal project. Mr. Grom responded that Tarrant's parts "meet or exceeds [sic] TRANE specifications."

## VIII.

 Tarrant next argues that Trane effectively created a group boycott in violation of section one of the Sherman Act by implementing the broker policy and coercing its independently-owned CSOs to cooperate with the broker policy. Tarrant argues that the independent CSOs were coerced to abide by the broker policy because Trane had the power to terminate their franchises if they refused to follow the broker policy.

Tarrant's claim is meritless. Trane unilaterally imposed the broker policy and the independent CSOs merely acquiesced in the decision. Thus, Tarrant has failed to establish any evidence of a group boycott in violation of section one of the Sherman Act and was therefore entitled to summary judgment on this claim.

## IX.

For the reasons stated, we AFFIRM in part and REMAND in part.