**COMPUWARE CORP., Plaintiff,**

v.

**INTERNATIONAL BUSINESS MACHINES, Defendant.**

No. 02–CV–70906.

United States District Court,
E.D. Michigan,
Southern Division.

July 25, 2002.

598

Daniel Johnson. Jr., Fenwick & West, Palo Alto, CA, David A. Ettinger, Honigman, Miller, Detroit, MI, Stuart P. Meyer, Fenwick & West, Mountain View, CA, for plaintiff.

Thomas G. Rafferty, Rowan D. Wilson, Evan R. Chesler, Cravath, Swaine, New York City, Kurt E. Richter, Morgan & Finnegan, New York City, Saul A. Green, Larry J. Saylor, Miller, Canfield, Detroit, MI, for defendant.

*ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND FOR A MORE DEFINITE STATEMENT AND GIVING PLAINTIFF THE OPPORTUNITY TO AMEND ITS COMPLAINT*

STEEH, District Judge.

Both parties in this case compete in the market for Mainframe Software Tools. Such tools are designed to improve the productivity of various "high end" mainframe computers created by defendant International Business Machines ("IBM"). This case arises out of plaintiff Compuware's allegations that, with regard to its Mainframe Software Tools, IBM infringed Compuware's copyrights, misappropriated trade secrets, tortiously interfered with contracts and business expectancy and violated the unfair competition laws of various states. IBM's motion to dismiss and for a more definite statement is DENIED, however, Compuware will be given the oppor-

tunity to amend its complaint to comply with the law as discussed below.

## FACTUAL BACKGROUND

IBM possesses a monopoly position in high end mainframe computers and the basic software used to run those computers, including the operating systems, database and transaction processing software, and the computer languages most frequently used on those computers. Compuware is and has been the largest seller of Mainframe Software Tools, which are used by IBM's and Compuware's customers to more effectively operate in the IBM mainframe "environment."

In 1999, IBM began competing with Compuware by selling its own Mainframe Software Tools. Compuware alleges that IBM has copied Compuware's software; cut Compuware off from critical technical information about IBM's "monopoly software"; changed IBM's monopoly software in order to interfere with the operation of competing Mainframe Software Tools; tied IBM's monopoly hardware and software with its Mainframe Software Tools; and steered customers away from competing products by offering misleading advice and making it more difficult to install the products of Compuware.

IBM filed the present motion, alleging that Compuware has failed to state a cause of action for a violation of the Sherman Act in Count 4 (unlawful tying), Count 5 (monopoly leveraging), and Count 6 (attempted monopolization). IBM also moves to dismiss for failure to state a cause of action in Count 7 (intentional interference with contractual relations). IBM finally moves for a more definite statement in Counts 1 through 3 and 8 through 15.

## LEGAL STANDARD

1. *Motion to Dismiss*

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a claim on an issue of law. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In considering a Rule 12(b)(6) motion, a court must "accept all of plaintiff's factual allegations as true and determine whether any set of facts consistent with the allegations would entitle the plaintiff to relief." *G.M. Eng'r and Assoc., Inc. v. West Bloomfield Twp.*, 922 F.2d 328, 330 (6th Cir.1990).

■ "The essential elements of a private antitrust claim must be alleged in more than vague and conclusory terms to prevent dismissal of the complaint on a defendant's 12(b)(6) motion." *Found. for Interior Design Educ. Research v. Savannah Coll. of Art & Design*, 244 F.3d 521, 530 (6th Cir.2001). However, notice pleading under Rule 8 is still the standard that applies to plaintiff's complaint. In an antitrust action, "the complaint need only allege sufficient facts from which the court can discern the elements of an injury resulting from an act forbidden by the antitrust laws." *Kerasotes Michigan Theatres, Inc. v. National Amusements, Inc.*, 854 F.2d 135, 136 (6th Cir.1988).

2. *Motion for a More Definite Statement*

■ A more definite statement is warranted in instances where a complaint is unintelligibly vague or does not contain information sufficient to formulate a responsive pleading. Fed.R.Civ.P. 12(e). "Polishing the pleadings by means of motion practice is rarely worth the effort." 5 Charles A. Wright & Arthur A. Miller, *Federal Practice and Procedure*, § 1218, at 185 (1990). Any evidentiary detail a defendant may require is more properly the subject of discovery. *Communities for Equity v. Michigan High School Athletic*

*Assoc.,* 26 F.Supp.2d 1001, 1009 (W.D.Mich.1998).

## ANALYSIS

### I. MOTION TO DISMISS

#### 1. *Count 4—Tying Claim*

■ To state a claim for tying, "(1) [t]here must be a tying arrangement between two distinct products or services; (2)[t]he seller must have sufficient economic power in the tying market to restrain appreciably competition in the tied product market; and (3)[t]he amount of commerce affect[ed] must be not insubstantial." *Bouldis v. U.S. Suzuki Motor Corp.,* 711 F.2d 1319, 1330 (6th Cir.1983) (citations omitted). In order to establish a tying arrangement, the plaintiff must allege "coercion by the seller, i.e., the seller must condition the sale of the tying product on the buyer's purchase of the tied product." *Foremost Pro Color, Inc. v. Eastman Kodak Co.,* 703 F.2d 534, 540 (9th Cir.1983), overruled on other grounds by *Hasbrouck v. Texaco, Inc.,* 842 F.2d 1034 (9th Cir. 1987).

Compuware states in its complaint at ¶ 63 that:

IBM has also tied certain sales of its critical software, including software and compilers for COBOL, C/C++ and PL/I, with its sales of Debug Tool. Debug Tool is provided with compilers included in many software releases of these products, and therefore any customer purchasing one of the foregoing releases is forced to purchase and install Debug Tool. . . .

IBM argues that Compuware has not alleged that consumers cannot purchase the software and compilers for COBOL, C/C++ and PL/I software separately from Debug Tool. While IBM may offer consumers the option of purchasing a "software release" that includes a compiler and Debug Tool, Compuware does not allege that a consumer can only purchase compilers through these "software release" packages.

Compuware responds that it intends to prove that IBM's "full function offerings" of its monopoly software could be purchased only with Debug Tool included. Compuware also states that it will prove that IBM tied the sale of Mainframe Software Tools to its monopoly software by the frequent packaging of these products at a price that was substantially lower than any separate purchase.

IBM's motion to dismiss Count 4 is denied because, given the opportunity to prove them, it appears there may be facts in support of Compuware's tying argument which would entitle it to relief. Compuware's complaint, however, fails to conform to its argument in opposition to dismissal for failure to state a claim for relief. The Court will give Compuware the opportunity to amend its tying count to allege that IBM forces its software and compiler customers to also purchase or receive Mainframe Software Tools by tactics that include economic coercion. Compuware has failed to allege either that customers cannot purchase software or compilers alone, or that reasonable customers are forced to purchase the package with Mainframe Software Tools because of the various tactics used by IBM.

#### 2. *Count 6—Attempted Monopolization*

■ The Sixth Circuit has held that "[a] claim for attempted monopolization under Section two of the Sherman Act requires: (1) a specific Intent to monopolize; (2) anticompetitive conduct; and (3) a dangerous probability of success." *Tarrant Serv. Agency, Inc. v. Am. Standard, Inc.,* 12 F.3d 609, 615 (6th Cir.1993) (citation omitted). IBM contends that Compuware has failed to allege adequately the third element of an attempted monopolization

claim, that IBM has achieved a dangerous probability of success of monopolization of the Mainframe Software Tools market. IBM maintains that it is necessary for Compuware to allege that IBM possesses a high market share in the Mainframe Software Tools markets.

■ Compuware argues that while a high market share is often a short-cut basis for finding a dangerous probability that defendant will succeed at monopolization, it is not a requirement for such a claim. *Tarrant Service Agency, Inc. v. American Standard, Inc.*, 12 F.3d 609, 615 (6th Cir.1993). Courts have recognized that high market share is not the only way to show a dangerous probability that defendant will succeed where other evidence exists. *Id.* at 615–16.

In its complaint, Compuware alleges that IBM has achieved a dangerous probability of success of monopolization in the Mainframe Software Tools market based on barriers to entry, i.e., IBM's alleged tying, IBM's alleged failure to predisclose technical information and the alleged "steering" activities of IBM Global Services. (Complaint §§ 78(e), 79). IBM argues that Compuware must do more than make conclusory allegations of barriers to entry to satisfy the pleading requirements for a claim of attempted monopolization.

Compuware contends it goes further than making conclusory allegations in its complaint. Compuware alleges that in order to develop Mainframe Software Tools, it and other independent software vendors (ISVs) "must have access to IBM technical information in order to develop and service customers in the IBM environment." (Complaint at 10). Compuware alleges that IBM has recently denied this information to its Mainframe Software Tools competitors. (Complaint at 53). Compuware concludes that such actions have "restrict[ed] competition in mainframe software tools." (Complaint at 58). In addi-

tion, Compuware has alleged that it is impossible for third parties to supply mainframe software without the cooperation of IBM because Mainframe Software Tools depend on IBM software, and many customers depend on decisions made for them by IBM Global Services. (Complaint at 11). It is alleged that IBM has used its power over customer decisions to foreclose competition in the relevant markets. (Complaint at 73). IBM is also accused of tying the sales of its Mainframe Software Tools to its monopoly software, thus excluding the tools made by Compuware. (Complaint at 63, 65).

■ As recognized by the Sixth Circuit in *Tarrant, supra,* in the absence of a showing of high market share, "other evidence" of a dangerous probability of monopolization must be demonstrated. Compuware characterizes its allegations as indicating that IBM approaches monopoly power, i.e., "the power to control prices or exclude competition." *United States v. Grinnell Corp.*, 384 U.S. 563, 571, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966). Given IBM's position in the mainframe computer market, and the role allegedly played by IBM Global Services, Compuware's allegations of IBM setting up barriers to the Mainframe Software Tools market go far enough at the pleading stage to demonstrate a dangerous probability of monopolization. Therefore, IBM's motion to dismiss Compuware's attempted monopolization claim is denied.

### 3. *Count 5—Monopoly Leveraging*

■ The Sixth Circuit has specifically defined leveraging as "the use of monopoly power in one market to amplify or 'leverage' a position in another competitive market." *Kerasotes Mich. Theatres, Inc. v. Nat'l Amusements, Inc.*, 854 F.2d 135, 137 (6th Cir.1988) (citation omitted). The Sixth Circuit did not require a plaintiff to

show that a defendant has attempted to monopolize a second market or that it has achieved any market power, but only required a showing that a monopolist has "used" its monopoly power in the first market to gain a "competitive advantage" in a second market. *Id.* at 137–38. Since *Kerasotes* was decided, however, the Supreme Court issued the case of *Spectrum Sports, Inc. v. McQuillan,* 506 U.S. 447, 113 S.Ct. 884, 122 L.Ed.2d 247 (1993), which emphasized that the conduct of a single firm is unlawful under the Sherman Act only when it threatens actual monopolization. *Id.* at 456 (citations omitted). The Court held that in order to determine whether there is a dangerous probability of monopolization, courts have found it necessary to consider the relevant market and the defendant's ability to lessen or destroy competition in that market. *Id.*

*Spectrum Sports* did not directly address a claim of monopoly leveraging, rather it addressed attempted monopolization. However, a monopoly leveraging claim also comes under Section 2 of the Sherman Act, and therefore it is subject to the Supreme Court requirement of showing actual monopolization or a dangerous threat of monopolization. In its complaint, Compuware alleges that, "If IBM's conduct is not enjoined, there is a dangerous probability that IBM will attain monopoly power in each of the mainframe software tools markets." (Complaint at 79). While this statement complies with the *Spectrum Sports* standard, Compuware subsequently alleges that IBM has used its monopoly position in the markets for mainframe computers, operating systems and basic software to "gain an unfair competitive advantage" in the Mainframe Software Tools market. (Complaint at 117). This later statement follows the *Kerasotes* standard but not the enhanced requirement of *Spectrum Sports.* The court will give Compuware the opportunity to amend its monopoly leveraging claim to comport with the standard set forth by the Supreme Court.

■ IBM next points out that a monopolist who changes its products for legitimate business reasons is under no duty to disclose information concerning its new products to competitors in secondary markets. *Berkey Photo v. Eastman Kodak Co.,* 603 F.2d 263, 281 (2d Cir.1979). It is only when a monopolist wields its monopoly power in one market improperly to impact competition in another, such as through refusing to deal in goods or services needed by a competitor, that a cause of action for monopoly leveraging may arise. *Id.* at 291.

Compuware alleges that IBM has changed its CICS and DB2 products in a manner that makes it more difficult for Compuware's Mainframe Software Tools to work effectively in those environments. (Complaint at 59). According to IBM, Compuware has not alleged that such changes were made for other than legitimate business purposes, such as improving the product or for efficiency considerations.

■ A reading of Compuware's complaint reveals allegations that IBM has used its monopoly power in its hardware and software to harm competition in the Mainframe Software Tools markets. (Complaint at 53–62, relating to the allegation that IBM has stopped passing on technical information about its critical software in order to harm competition in Mainframe Software Tools.). Compuware has also alleged that substantial efficiencies were created by IBM's earlier cooperation with Compuware and provision of information to Compuware, which IBM has now ended. Compuware has alleged enough at the pleading stage to avoid dismissal of its monopoly leveraging claim on this basis.

#### 4. *Count 7—Tortious Interference with Business Expectancy*

■ Under Michigan law, a plaintiff alleging intentional interference with prospective business relations must establish (1) a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) an intentional interference inducing or causing a breach or termination of a relationship or expectancy; and (4) damages. *Michigan Podiatric Medical Ass'n v. National Foot Care Program, Inc.*, 175 Mich. App. 723, 735, 438 N.W.2d 349 (1989). IBM alleges that Compuware's claim in Count 7 should be dismissed because Compuware fails to assert that it had a valid business relationship or expectancy.

Compuware alleges in its complaint that IBM's unethical practices have threatened to interfere with Compuware's existing relationships. (Complaint at 74 and 127). Compuware also alleges that its Mainframe Software Tools are superior to those of IBM. (Complaint at 73). Finally, Compuware alleges that in a free competitive market (without tying), IBM's customers would have chosen Compuware's higher quality products over those of IBM. (Complaint at 66).

■ IBM maintains that Compuware fails to assert that it had a valid business relationship or expectancy, and does not identify any specific current or prospective relationships with which IBM has interfered. This district has held that simply being a qualified supplier in the field, or having a subjective expectation of entering into a relationship is not enough. *Grand Rapids Plastics, Inc. v. Lakian*, 1997 U.S. Dist. LEXIS 20317, *35 (E.D.Mich.1997). A fair reading of the complaint shows that Compuware does not rely solely on its status as a competitor in the industry. Compuware alleges enough for notice pleading when it refers to "Customers who have used and would otherwise continue to use Compuware's mainframe software tools will be diverted to IBM's products." (Complaint at 127). The court, however, will permit Compuware to amend its Count 7, if desired, to make a stronger statement of tortious interference with a business expectancy.

### II. MOTION FOR MORE DEFINITE STATEMENT

IBM moves for a more definite statement with respect to Compuware's claims for copyright infringement (Count 1), trade secret misappropriation (Count 2), intentional interference with contractual relations (Count 3), and unfair competition (Counts 8 through 15).

IBM takes issue with the fact that Compuware alleges that IBM copied or misappropriated unspecified portions of Compuware's object code and source code, including "formulas, patterns, compilations, programs, devices, methods, techniques, manuals, and processes related to Compuware's mainframe software tools" through unspecified third parties and unspecified current or former employees of Compuware. (Complaint at 81–109). Absent some specificity, such as the portions of Compuware's trade secrets or copyrights allegedly misappropriated or infringed, IBM maintains it cannot ascertain the facts underlying its alleged infringement or misappropriation of Compuware's intellectual property.

#### 1. *Copyright Infringement*

■ In its complaint, Compuware sets forth the specific original works that are the subject of Compuware's copyright claims, File–AID and Abend–AID; Compuware's ownership of those works; the specific identity of IBM's allegedly infringing products, File Manager and Fault Analyzer; and the portions of its products Compuware contends IBM illegally copied,

including Compuware's object code, source code and user manuals of the File–AID and Abend–AID computer programs. The Complaint also sets forth several examples of infringement: the security exit scheme unique to File–AID is substantially similar to that in IBM's product; there are restrictions, limitations and bugs in IBM's File Manager program that strongly indicate copying of source code; IBM's products allocate datasets in virtually the same ways as Compuware's products; the hierarchical commands in IBM's File Manager product are substantially similar to those in Compuware's File–Aid; several modules in IBM's File Manager and File Analyzer appear to have been literally copied from Compuware's source code; and numerous passages in IBM's File Manager user manual are nearly verbatim copies of Compuware's File–AID IMS manual. (Complaint at 84) These allegations are sufficient to place IBM on notice of the claim against it for copyright infringement for purposes of answering the complaint.

2. *Misappropriation of Trade Secrets*

■ In Michigan, to succeed on a claim for misappropriation of a trade secret, a plaintiff must prove the following elements by a preponderance of the evidence: (1) the existence of a trade secret; (2) its acquisition in confidence; and (3) the defendant's unauthorized use of it. *Rothschild v. Ford Motor Co.*, 2 F.Supp.2d 941, 950 (E.D.Mich.1998). Michigan courts have defined "trade secret" as that which "consists of any valuable formula, pattern, device, process, or other information that is used in one's business and gives the possessor a competitive advantage over those who do not know or use the information." *Id.* at 950 n. 12. Finally, in order to prove a claim for misappropriation of trade secrets, Michigan courts have found that an alleged trade secret must be identified "clearly, unambiguously, and with specificity." *Shatterproof Glass Corp. v. Guard-*

*ian Glass Co.*, 322 F.Supp. 854, 867 (E.D.Mich.1970).

■ Compuware alleges the existence of trade secrets, comprised of its Mainframe Software Tools and underlying source code. (Complaint at 97). Compuware further alleges that IBM acquired said trade secrets in confidence, and used them without authorization. (Complaint at 98). While Compuware has not identified the trade secrets "clearly, unambiguously, and with specificity," such is not necessary at the pleading stage. The court finds that Compuware's allegations give adequate notice of its cause of action to IBM. Any further specificity desired by IBM can be achieved through discovery.

3. *Intentional Interference with Contractual Relations*

■ As for Compuware's claim of intentional interference with contractual relations, IBM is accused of causing or persuading one or more of Compuware's employees or former employees to breach their confidentiality agreements and to reveal to IBM Compuware's source code to its Mainframe Software Tools. This allegation identifies the contractual relations at issue—confidentiality agreements with employees prohibiting them from disclosing Compuware's trade secrets to third parties. IBM has enough information to file a responsive pleading, and may conduct discovery to seek additional details.

4. *Unfair Competition*

■ Compuware also alleges that IBM has violated the unfair competition statutes of the states of California, Connecticut, Nebraska, North Carolina, South Carolina, Tennessee, Utah and Washington, making reference to the allegations relating to Compuware's copyright and trade secret claims. On that basis, IBM seeks a more

definite statement as to the unfair competition claims. IBM does not address the state unfair competition law claims to the extent they challenge IBM's anticompetitive behavior. Because the court finds that the complaint contains sufficient allegations of copyright infringement, and misappropriation of trade secrets, these claims are also sufficient.

## CONCLUSION

For the reasons set forth above, defendant's motion to dismiss and for a more definite statement is DENIED. Plaintiff shall have until August 15, 2002, to amend its complaint in accordance with the court's opinion.