NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**FLEET ENGINEERS, INC.,**
*Plaintiff-Appellee*

**v.**

**MUDGUARD TECHNOLOGIES, LLC,**
*Defendant*

**TARUN SURTI,**
*Defendant-Appellant*

_____

2018-2351

_____

Appeal from the United States District Court for the Western District of Michigan in No. 1:12-cv-01143-PLM, Chief Judge Paul L. Maloney.

_____

Decided: February 25, 2019

_____

GEORGE THOMAS WILLIAMS, III, McGarry Bair PC, Grand Rapids, MI, for plaintiff-appellee.

TARUN SURTI, Brentwood, TN, pro se.

_____

Before LOURIE, BRYSON, and MOORE, *Circuit Judges.*

PER CURIAM.

Tarun Surti appeals from a decision of the U.S. District Court for the Western District of Michigan granting summary judgment in favor of Fleet Engineers, Inc. on his claims of infringement of U.S. Patent No. RE44,755, breach of contract, and misappropriation of trade secrets. We hold that the district court properly granted summary judgment as to the breach of contract and misappropriation of trade secrets claims. We vacate the grant of summary judgment of noninfringement and remand for further proceedings.

BACKGROUND

Mr. Surti is the inventor and owner of the RE'755 patent and the president of Mudguard Technologies. The RE'755 patent relates to "a mud flap for preventing spray from the wheel of a vehicle on a wet roadway from impairing the vision of drivers of other vehicles." RE'755 patent at 1:12–15. According to the specification, the invention "separates air, water and road debris thrown up by a tire or wheel and directs the water and debris to the ground while allowing the air to pass through the air outlets." *Id.* at 4:19–22. Claim 1 of the RE'755 patent recites (emphasis added):

> 1. A mudflap for preventing spray from a wheel of a vehicle on a wet roadway from impairing the vision of drivers of other vehicles, comprising a vertically extending flap which is mounted to the rear of the wheel with a front side of the flap facing the wheel and a rear side facing away from the wheel, *a plurality of laterally spaced, vertically extending vanes defining a plurality of vertically extending channels* on the front side of the flap for directing water and debris from the wheel in a downward direction toward the ground and not to the rear or sides of the flap, and *vertically extending slotted openings in the channels of a size* permitting air to

pass through the openings to the rear of the flap and *preventing water and debris from doing so.*

Fleet develops, manufactures, and sells after-market products for the trucking industry. In July 2010, Mudguard and Fleet entered into a "Distributor Agreement" for Mr. Surti's mud flap, the V-Flap, shown below. J.A. 312, 500.



J.A. 435. A few months later, the Distributor Agreement was terminated. In February 2012, Fleet introduced its own mud flap, the AeroFlap. There are three different configurations of the AeroFlap, shown below.

  

Part No. 033-08001        Part No. 033-08002        Part No. 033-08004

J.A. 444.

In April 2012, U.S. Patent No. 8,146,949 issued with Mr. Surti as the sole named inventor and owner. In June, Mr. Surti sent Fleet a letter through counsel asserting that the AeroFlap infringed claims of the '949 patent. Mr. Surti also informed some of Fleet's customers that the AeroFlap was an infringing product.

In October 2012, Fleet sought a declaratory judgment of noninfringement and invalidity and asserted a state-law

claim for tortious interference with business relationships. Mr. Surti, proceeding pro se, counterclaimed for patent infringement, breach of contract, and misappropriation of trade secrets. During the early stages of litigation, Mr. Surti indicated in his Statement of Claims Infringed and Infringing Products that he was asserting claims 1–2, 5, 8–9, and 13 of the '949 patent, but he expressly reserved the right to supplement the disclosures in that Statement. A couple weeks prior, Mr. Surti filed for a reissuance of the '949 patent, which reissued as the RE'755 patent on February 11, 2014. The RE'755 patent did not alter the originally issued claims 1–17, but added claims 18–25. Fleet amended its pleading to assert that "it does not infringe any valid claim of the [RE]'755 reissue patent." J.A. 294. Mr. Surti amended his counterclaim to assert infringement of "the claims of the [RE]'755 reissue [p]atent." J.A. 395. However, no amended Statement of Claims Infringed and Infringing Products was ever filed.

The district court entered default judgment against Mudguard. The remaining parties cross-moved for summary judgment. The district court granted summary judgment on noninfringement. It also granted summary judgment that Fleet did not breach a contract with Mr. Surti or misappropriate Mr. Surti's trade secrets. On motion from Fleet, the district court dismissed Fleet's claims as to invalidity of the RE'755 patent claims with prejudice and tortious interference against Mr. Surti without prejudice.

Mr. Surti appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We review a grant of summary judgment according to the law of the regional circuit, here the Sixth Circuit. *Microsoft Corp. v. Geotag, Inc.*, 817 F.3d 1305, 1313 (Fed. Cir. 2016). The Sixth Circuit reviews a grant of summary judgment de novo. *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915,

919 (6th Cir. 2003). "Summary judgment is proper where there exists no issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* at 920 (citing Fed. R. Civ. P. 56). We construe "all reasonable factual inferences in favor of the nonmoving party." *Id.* "[S]ummary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## I. PATENT INFRINGEMENT

While we are sympathetic to the fact that the district court is handling a complex patent case involving a pro se patent owner, the district court erred in granting summary judgment of noninfringement. In granting summary judgment, the district court determined that the AeroFlap does not contain three limitations of the RE'755 patent claims. First, the district court held the AeroFlap does not have the claimed "vanes" because its channels are formed from depressions in the surface of its mud flap, rather than from vanes that protrude from the surface. Second, it held these depressions in the AeroFlap do not prevent water and debris from passing through slotted openings. Third, to the extent the AeroFlap has the claimed "vanes," "channels," or "slotted openings," it held they are not "vertically extending." The district court's analysis of these limitations was erroneous.

As an initial matter, we see no error in the district court's construction of "vane." The court defined "vane" as "a relatively thin, rigid structure, like a blade, that is attached to another structure or surface." J.A. 29. It clarified that this means "a vane must protrude or rise from the rear wall of the mud flap." J.A. 30. The specification describes vanes as "protruding" and having a rounded front edge and tapered lateral surfaces that "direct air, water and debris into the channels." '755 patent at 2:30–34, 3:21.

It further states that "[t]he vanes stiffen the flap and minimize the curl-up to enhance the downward flow of the water and debris." *Id.* at 4:27–29. This description is consistent with the district court's construction.

We agree with Mr. Surti, however, that a genuine issue of fact exists as to whether the AeroFlap has the claimed vanes. The district court based its conclusion that the AeroFlap does not have "vanes" on the fact that its channels are created from depressions in the front surface of the mud flap, rather than structures that protrude from a surface. Though AeroFlap's vanes are flush with the front surface of the mud flap, a reasonable jury could conclude that they protrude from the rear wall of the channels. The construction of vanes does not require that the vanes protrude beyond all other surfaces on the mud flap. Moreover, in making its determination that the accused mud flap does not have vanes, the district court at times compared the accused product to Mr. Surti's commercial embodiment (V-Flap) rather than the claim limitations. *See* J.A. 31 (noting that the V-Flap "contains a series of structures that look very much like wiper blades for the windshield of a car (vanes), which are all attached to a flat panel (rear wall) creating channels" before concluding that the AeroFlap does not have "thin, blade-like structures"); *see also id.* (stating in its doctrine-of-equivalents analysis that "[w]hen compared side-by-side, the cross sections of the two mud flaps are substantially different"). The district court's analysis of whether AeroFlap's "depressions" perform the claimed functions of the "channels" also focused on a comparison of the accused product to Mr. Surti's V-Flap. *See* J.A. 32 (concluding that "[u]nlike [Mr.] Surti's mud flap, where the channel allows the water and debris to flow down the face of the mud flap, Fleet's depressions trap the water and debris"). "[I]nfringement is determined on the basis of the claims, not on the basis of a comparison with the patentee's commercial embodiment of the claimed invention." *Int'l*

*Visual Corp. v. Crown Metal Mfg. Co.*, 991 F.2d 768, 772 (Fed. Cir. 1993) (quoting *ACS Hosp. Sys., Inc. v. Montefiore Hosp.*, 732 F.2d 1572, 1578 (Fed. Cir. 1984)). On remand, the district court should assess infringement by comparing the accused products to the invention as claimed, not to Mr. Surti's product.

We also agree with Mr. Surti that there was a genuine issue of fact which precluded summary judgment as to the "vertically extending" limitation. Mr. Surti argues Aero-Flap's lower section has "vertically extending" channels and slotted openings. While the district court relied on the fact that "[t]he majority of the structures on Fleet's mud flap are at a 45 degree angle," J.A. 32, it is undisputed that two out of the three accused products, identified as Part Nos. 033-08002 and 033-08004, also have vertically extending channels and slotted openings at the bottom. During claim construction, the parties disputed whether the term "vertically extending vanes defining a plurality of vertically extending channels" requires the channels to extend the length of the mud flap without interruption. The district court concluded that it does not, as there is "no length requirement for either the vane or the channel." J.A. 263. According to this construction, the vertical extensions do not have to span the entire mud flap in order for infringement to exist. As the claims at issue are open-ended "comprising" claims, the presence of unclaimed elements (such as vanes or channels at an angle) does not necessarily negate infringement. We conclude that a reasonable jury could find that the presence of *some* channels that are vertically extending across the bottom of the AeroFlap may satisfy this limitation.

We note that there also appears to be confusion between the court and the parties as to which claims are at issue. Before the RE'755 patent issued, Mr. Surti indicated in his Statement of Claims Infringed and Infringing Products that he was asserting claims 1–2, 5, 8–9, and 13 of the '949 patent. Following the issuance of RE'755, Mr. Surti

amended his counterclaim and asserted infringement of "the claims of the [RE]'755 reissue [p]atent." J.A. 395. And in his summary judgment briefing below, Mr. Surti specifically discussed infringement of claims 1 and 19 of the RE'755 patent. In contrast, Fleet took the position that the originally asserted claims of the '949 patent were the only claims at issue in the litigation. There is no agreement as to representative claims.

It is not entirely clear from the district court's summary judgment opinion which claims it considered. The decision notes that claims 18–25, which were added in the RE'755 patent, are consistent with its claim construction order addressing disputed terms in the '949 patent claims. The opinion also focuses for non-infringement on limitations that only appear in claims 18 and 25. *See* J.A. 32 (discussing whether the AeroFlap's depressions "substantially prevent" or "prevent a majority of the water and debris collected in them from passing through the slotted openings"). At another point, however, it notes that claims 1, 5, 9, and 13 all require vertically extending vanes, channels, and slotted openings, even though claims 2 and 8, which were undisputedly asserted, and claims 18, 21, and 25 also contain these limitations. Finally, the opinion never addresses infringement of claim 19, one of the claims specifically briefed below.

Without deciding infringement as to this claim, we note that at least claim 19 appears to lack each of the limitations that formed the basis for granting summary judgment. Courts are required to liberally construe pleadings filed pro se. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Under this standard, Mr. Surti's amended counterclaim could be treated as asserting all newly issued claims of the RE'755 patent, including claim 19, which he specifically argued in his summary judgment briefing and which the district court did not address. On remand, the district court should determine which claims are being asserted and

conduct its infringement analysis with regard to each of those claims and their respective limitations.

In light of the above errors, we vacate the grant of summary judgment of noninfringement and remand for further proceedings consistent with this opinion.

## II. BREACH OF CONTRACT

Mr. Surti appeals the grant of summary judgment in favor of Fleet on his breach of contract claim. Under Michigan law, Mr. Surti must establish the existence of a valid contract with Fleet. *Miller-Davis Co. v. Ahrens Constr., Inc.*, 495 Mich. 161, 178 (2014). The two contracts in the record, a "Confidentiality and Non-Compete Agreement" and a "Distributor Agreement," are between Fleet and Mudguard, not Mr. Surti. Because Mr. Surti has failed to present evidence of a contract between him and Fleet, an essential element of his claim, summary judgment was appropriate.

## III. MISAPPROPRIATION OF TRADE SECRETS

Mr. Surti appeals the grant of summary judgment in favor of Fleet on his misappropriation of trade secrets claim. Mr. Surti asserted misappropriation of trade secrets related to intellectual property, manufacturing, and marketing. The district court granted summary judgment for three reasons. First, Mr. Surti cannot raise a claim on behalf of Mudguard. Second, he failed to identify with sufficient specificity which of his trade secrets were misappropriated. Third, information disclosed in the RE'755 patent is not a trade secret.

We agree that summary judgment was appropriate. Under Michigan law, "misappropriation" of a trade secret includes:

> (i) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means.

(ii) Disclosure or use of a trade secret of another without express or implied consent by a person who did 1 or more of the following:

> (A) Used improper means to acquire knowledge of the trade secret.

> (B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was derived from or through a person who had utilized improper means to acquire it, acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or derived from or through a person who owed a duty to the person to maintain its secrecy or limit its use.

> (C) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Mich. Comp. Laws. § 455.1902(b). "[A]n alleged trade secret must be identified clearly, unambiguously, and with specificity." *Compuware Corp. v. IBM*, 259 F. Supp. 2d 597, 605 (E.D. Mich. 2002) (internal quotation marks omitted). The only information that Mr. Surti identifies with sufficient specificity is related to his design for his mud flap, which was included in his patent application, which published on March 3, 2011, nearly a year prior to Fleet introducing the AeroFlap. Information is not a trade secret unless "efforts that are reasonable under the circumstances" are used "to maintain its secrecy." Mich. Comp. Laws § 455.1902(d)(ii). Placing that information in a patent application is a failure to use such reasonable efforts. *See Foster v. Pitney Bowes Corp.*, 549 F. App'x 982, 989 (Fed. Cir. 2013) (applying a similar requirement under

Pennsylvania law). We thus affirm the grant of summary judgment as to the misappropriation of trade secret claim.

## IV. TORTIOUS INTERFERENCE IN BUSINESS RELATIONS

Mr. Surti attempts to appeal the judgment against Mudguard for tortious interference with business relations. But Mudguard is not an appellant. Mr. Surti cannot appeal on behalf of Mudguard. Thus, the judgment against Mudguard must stand.

## CONCLUSION

For the foregoing reasons, we vacate the district court's grant of summary judgment of noninfringement, remand for further proceedings, and otherwise affirm.

## AFFIRMED-IN-PART, VACATED-IN-PART, AND REMANDED

## COSTS

No costs.